UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF WARRENVILLE, VILLAGE OF BEDFORD PARK, CITY OF OAKBROOK TERRACE, VILLAGE OF OAK LAWN, VILLAGE OF ORLAND HILLS, CITY OF ROCKFORD, and VILLAGE OF WILLOWBROOK, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | File No. _____ |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| PRICELINE.COM, INCORPORATED, LOWESTFARE.COM, LLC (f.k.a. LOWESTFARE.COM INC.), MAUPINTOUR HOLDING, LLC, TRAVELWEB, LLC, EXPEDIA, INC. (DE), EXPEDIA, INC. (WA), HOTELS.COM, LP, HOTELS.COM GP, LLC, HOTWIRE, INC., TRAVELSCAPE, LLC, EGENCIA, INC., SABRE HOLDINGS CORPORATION, TRAVELOCITY.COM, LLC (f.k.a. TRAVELOCITY.COM, INC.), TRAVELOCITY.COM, LP, SITE59.COM, LLC, DOES 1 THROUGH 1000, INCLUSIVE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**CLASS ACTION COMPLAINT**

NOW COME Plaintiffs, by and through their undersigned counsel and on behalf of themselves and other similarly situated Illinois municipalities ("Class Members") and complain of Defendants as follows:

**I.    PARTIES**

1.    Plaintiff *City of Warrenville, Illinois* ("Warrenville") is a municipality located in DuPage County, Illinois.

2.    Plaintiff *Village of Bedford Park, Illinois* ("Bedford Park") is a municipality

located in Cook County, Illinois.

3.      Plaintiff *City of Oakbrook Terrace, Illinois* ("Oakbrook Terrace") is a municipality located in DuPage County, Illinois.

4.      Plaintiff *Village of Oak Lawn, Illinois* ("Oak Lawn") is a municipality located in Cook County, Illinois.

5.      Plaintiff *City of Orland Hills, Illinois* ("Orland Hills) is a municipality located in Cook County, Illinois.

6.      Plaintiff *City of Rockford, Illinois* ("Rockford") is a municipality located in Winnebago County, Illinois.

7.      Plaintiff *Village of Willowbrook, Illinois* ("Willowbrook") is a municipality located in DuPage County, Illinois.

8.      Defendants can be grouped into three distinct groups, as subsidiaries or indirect subsidiaries of either: A) Priceline; B) Expedia; or D) Travelocity.

**A.      The Priceline Defendants**

9.      *Defendant priceline.com, Incorporated* ("Priceline") is a Delaware corporation with its principal place of business in Norwalk, Connecticut.

10.      *Defendant Lowestfare.com, LLC* (f.k.a. Lowestfare.com, Incorporated) ("Lowestfare") is a Delaware limited liability company with its principal place of business in Norwalk, Connecticut.  Defendant Lowestfare is a wholly-owned subsidiary of Defendant Priceline.

11.      *Defendant Maupintour Holding, LLC* ("Maupintour") is a Nevada corporation with its principal place of business in Las Vegas, Nevada.  In June 2002, Priceline purchased the trademarks and registered Internet domain names of Lowestfare.com.  Vacation products

previously marketed on the Lowestfare.com site began being sold under the Defendant Maupintour brands at www.maupintour.com.

12.     *Defendant Travelweb, LLC* ("Travelweb") is a Delaware limited liability company with its principal place of business in Norwalk, Connecticut.  Defendant Travelweb is a wholly-owned subsidiary of Defendant Lowestfare.

**B.     The Expedia Defendants**

13.     *Defendant Expedia, Inc. (DE)* ("Expedia (DE)") is a Delaware corporation with its principal place of business in Bellevue, Washington.

14.     *Defendant Expedia, Inc. (WA)* ("Expedia (WA)") is a Washington corporation with its principal place of business in Bellevue, Washington.  Effective December 9, 2008, Hotels.com, Inc., a Delaware corporation, merged into Expedia (WA).  Effective January 1, 2009, TravelNow.com, Inc., a Delaware Corporation, merged into Expedia (WA).  Defendant Expedia (DE) is the parent corporation of Defendant Expedia (WA).

15.     *Defendant Hotels.com, LP* is a Delaware limited partnership with its principal place of business in Dallas, Texas.  Defendant Hotels.com, LP is a wholly-owned subsidiary of Defendant Expedia (WA).

16.     *Defendant Hotels.com GP, LLC* is a Texas limited liability company with its principal place of business in Dallas, Texas. Defendant Hotels.com, Gp, LLC is a wholly-owned subsidiary of Defendant Expedia (WA).

17.     *Defendant Hotwire. Inc.* ("Hotwire") is a Delaware corporation with its principal place of business in San Francisco, California. Defendant Expedia (DE) is the parent company of Defendant Hotwire.

18.     *Defendant Travelscape, LLC* ("Travelscape) is a Nevada limited liability

company with its principal place of business in Las Vegas, Nevada. Defendant Expedia (DE) is the parent company of Travelscape.

19.     *Defendant Egencia, LLC* ("Egencia") is a Nevada limited liability corporation with its principal place of business in Denver, Colorado. Defendant Expedia (DE) is the parent company of Egencia.

###     C.     The Travelocity Defendants

20.     *Defendant Sabre Holdings Corporation* ("Sabre") is a Delaware Corporation with its principal place of business in Texas.

21.     *Defendant Travelocity*.com, LLC (formerly known as Travelocity.com, Inc.) is a Delaware corporation with its principal place of business in Texas. Defendant Travelocity.com, LLC is an indirect subsidiary of Sabre Holdings Corporation.

22.     *Defendant Travelocity.com, LP* is a Delaware limited partnership with its principal place of business in Texas.

23.     *Defendant Site59.com LLC* ("Site59.com") is a Delaware limited liability company with its principal place of business in Texas. Defendant Site59.com is an indirect subsidiary of Sabre Holdings Corporation, a Delaware Corporation.

24.     The true names and capacities, whether individual, corporate, associate or otherwise, of each of the Defendants designated herein as a DOE are unknown to Plaintiffs at this time and therefore said Defendants are sued by such fictitious names. Plaintiffs will ask leave of the Court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and allege, that each of the Defendants designated herein as a DOE is legally responsible in some manner (including under the laws of agency) and liable for the events and practices herein alleged and, as such,

proximately caused damages to the Plaintiffs as hereinafter further alleged.

25.     Upon information and belief, some of the Defendants, including some or all DOE defendants, at all times herein mentioned, were acting as the agent, servant and employee of some or all of the other Defendants and within the scope of said agency and employment (collectively the "Agent Defendants").  Upon information and belief, at the time and place of the matters described, each of the Agent Defendants, their agents, servants and/or employees became liable to Plaintiff for one or more of the reasons described herein.

## II.     VENUE AND NATURE OF CLAIMS

26.     All Defendants regularly transact business within the State of Illinois and the claims asserted herein arise from their business conducted within the State of Illinois. Defendants are, thus, subject to the jurisdiction of this Court.

27.     This Court possesses subject matter jurisdiction of the claims asserted herein pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.     INTRODUCTION

29.     This action is brought to remedy violations of state law in connection with Defendants' misconduct in the failure to remit taxes to the named Plaintiffs and Class Members. Defendants failed to remit taxes due and owing under similar transient accommodations taxes to the Plaintiffs and Class Members.

## IV.     INTRODUCTION TO PLAINTIFFS' AND THE CLASS MEMBER ORDINANCES

30.     Warrenville levies and imposes a tax "upon all persons engaged in the city in the

business of renting, leasing, or letting rooms in a hotel, at the rate of five percent (5%) of the gross rental receipts from such renting, leasing or letting, excluding, however, from gross rental receipts, the proceeds of such renting, leasing or letting to permanent residents of that hotel" (hereinafter "Warrenville Hotel Operator's Tax"). *See* Warrenville, Illinois City Code ("Warrenville Code") § 3-1-5(B)(1).

31.     Bedford Park levies and imposes a tax "in the amount of ten and one-half percent (10.5%) of the one night room charge for the use and privilege of a room at any hotel, motel or other similar lodging facility operating within the corporate geographical limits of the village" (hereinafter "Bedford Park Hotel/Motel Room Tax"). *See* Bedford Park, Illinois Village Code ("Bedford Park Code") § 5-19-1.

32.     Oakbrook Terrace levies and imposes a tax "upon the use and privilege of renting, leasing or letting of rooms in a hotel in the city at a rate of 6% of the gross rental receipts from such rental, leasing or letting" (hereinafter "Oakbrook Terrace Hotel-Motel Room Tax"). *See* City of Oakbrook Terrace, Illinois Code of Ordinances ("Oakbrook Terrace Code") Title III, § 35.021.

33.     Oak Lawn levies and imposes a tax "upon the use and privilege of being a transient guest or lodger in a "hotel" or "motel", as defined in this section, in the village, a tax equal to eight percent (8%) of the cost or charge on the gross room rental made by the hotel or motel for every twenty four (24) hour period or any fraction thereof" (hereinafter "Oak Lawn Hotel and Motel Occupancy Tax").  *See* Oak Lawn, Illinois Village Code ("Oak Lawn Code") § 3-2-6(B).  "HOTEL, MOTEL: Includes every building or structure kept, used, maintained, advertised and held out to the public to be a place where lodging, or lodging and food, or apartments, suites or other accommodations are offered for a consideration of guests in which ten

6

(10) or more rooms, apartments or suites, or other accommodations are used for the lodging, or lodging and food, for such guests." *Id*. at § 3-2-6(A).

34. Orland Hills levies and imposes a tax "upon the rental and leasing of any hotel accommodations in the village at the following rates:

| EFFECTIVE DATE | RATE |
|----------------|------|
| April 27, 1993 | 2-½% |
| April 27, 1994 | 3% |
| April 27, 1995 | 3-½% |
| **EFFECTIVE DATE** | **RATE** |
| April 27, 1996 | 4% |
| April 27, 1997 | 4-½% |
| April 27, 1998 | 5%" |

(hereinafter "Orland Hills Hotel Accommodations Tax"). *See* Village of Orland Hills, Illinois Code of Ordinances ("Orland Hills Code") Title III, § 33.067.

35. Rockford levies and imposes a tax "upon all persons engaged in the city in the business of renting, leasing, or letting rooms in a hotel as defined in the hotel operator's occupation tax act (35 ILCS 145/1 et seq.), at a rate of five percent of the gross rental receipt from such renting, leasing or letting of rooms" (hereinafter "Rockford Hotel/Motel Tourism Tax"). *See* Code of Ordinances of the City of Rockford, Illinois ("Rockford Code") Pt. I, § 5-70. According to 35 ILCS 145/2(1) "'[h]otel' means any building or buildings in which the public may, for a consideration, obtain living quarters, sleeping or housekeeping accommodations", including "inns, motels, tourist homes or course, lodging houses, rooming houses and apartment houses."

36. Willowbrook levies and imposes a tax "at a rate of one percent (1%) of the gross rental receipts "upon all persons engaged in the village in the business of renting, leasing or letting rooms in a hotel on the gross rental receipts from such renting, leasing or letting, excluding, however, from gross rental receipts, the proceeds of such renting, leasing or letting to

permanent residents of that hotel" (hereinafter "Willowbrook Municipal Hotel Tax").  *See* Willowbrook, Illinois City Code ("Willowbrook Code") § 11-3-1.

37.     Class Members similarly levy and collect taxes and on lodging or overnight accommodations.  This tax may be denominated in different ways including, but not limited to, as an occupancy tax, a hotel or motel room tax, a use tax, a privilege tax, a hotel or motel tax, a licensing tax, an accommodations tax, a rental receipts tax, a hotel operator's tax, a hotel operator's occupation tax, or a room rental, lease or letting tax.  These taxes, the Warrenville Hotel Operator's Tax, Bedford Park Hotel/Motel Room Tax, Oakbrook Terrace Hotel-Motel Room Tax, Oak Lawn Hotel and Motel Occupancy Tax, Orland Hills Hotel Accommodations Tax, Rockford Hotel/Motel Tourism Tax, and Willowbrook Municipal Hotel Tax are hereinafter collectively referred to as "Accommodations Tax" or "Accommodations Taxes".  Regardless of how the tax is titled, it is correctly calculated as a percentage of the retail rate that each consumer occupant pays for lodging ("Retail Rate"), including service costs (the "Accommodations Tax Amount").

## V.     COMMON ALLEGATIONS

38.     Defendants are online travel companies and their affiliates or related companies ("OTCs").  Specifically, they are online sellers and/or online resellers of hotel rooms or other accommodations ("Lodging") to the general public (the "Consumers Occupants" or "Consumers").

39.     OTCs, like Defendants, transact business under two models: the "agency model" and the "merchant model."

40.     Under the "agency model" the OTCs act as traditional travel agents, facilitating reservations on behalf of a hotel and passing the reservation on to the hotel. The OTC will

receive a commission as an agent under this model.

41.     Under the "agency model," the transaction is between the hotel and the Consumer.

42.     Accommodations Taxes are calculated and collected by the hotel ("Hotel") on the Retail Rate charged to the Consumer.

43.     The Consumers are the taxpayers, and the hotels are the tax collectors. The agency model is **not** at issue in this Complaint.

44.     More than a dozen years ago, one or more OTCs began a pervasive use of the "merchant model." It is the "merchant model" that is the subject of this Complaint.

45.     The "merchant model" adopted by Defendants is a uniform, nationwide model that operates the same for all OTCs in all jurisdictions, including Illinois.

46.     Under this "merchant model," the Defendants/OTCs are the merchants of record in their transactions with the Consumers.

47.     Under the "merchant model," OTCs enter into contracts with individual Hotels wherein the parties agree on a wholesale price ("Wholesale Rate") for the Hotel rooms and the OTCs acquire the right to display, offer and facilitate reservations of the rooms to the public at a higher retail price ("Retail Rate").

48.     While the Wholesale Rate is negotiated between the Hotels and the OTCs, the OTCs generally have broad discretion in establishing and changing the Retail Rate they charge to customers.

49.     Stated simply, the OTCs profit by contracting with Consumers for Lodging at the Retail Rate, which is higher than the Wholesale Rate paid by the OTCs to Hotels.

50.     When a customer purchases a Hotel reservation through an OTC, the customer is

charged a single amount comprised of: (1) the Retail Rate, which includes (a) the Wholesale Rate" and (b) an amount retained by the Defendant for travel-related services it provided to the traveler (sometimes referred to as the "facilitation fee") and (2) "Taxes & Services," which consists of (a) an estimated amount to cover the state and local occupancy taxes on the Wholesale Rate and (b) additional amounts retained by the OTCs as compensation for its travel services.

51.     Although the OTCs state on their websites that the Retail Rate is a combination of the Wholesale Rate and their facilitation fee, they do not disclose the dollar amount of either.

52.     Therefore, at the end of the OTC transaction, the customer sees only three line items: "Wholesale Rate", "Taxes & Services" and "Total".

53.     The OTC and the customer strike a bargain for the payment of money for access to a Hotel room.

54.     When a customer reserves a Hotel room with an OTC, the OTC verifies with the Hotel that the room is available, charges the customer's credit card and issues a room confirmation to the customer.

55.     The OTCs themselves do not obtain the right to occupy any room at any time during a transaction.

56.     The OTCs charge the customer's credit card for the Retail Rate, which includes fees for their services.

57.     The customer cannot occupy the Hotel room unless he or she pays the fees and mark-ups the OTCs include in the Retail Rate (i.e., the difference between the Wholesale Rate the OTCs pay to the Hotel and the amount they charge to the customer).

58.     The customer does not pay the Hotel anything to get the key to the OTC-booked

room.

59.     No money changes hands between an OTC consumer and the Hotel unless the customer incurs charges for incidental like paring, laundry or food.

60.     Thus, the customer does not pay the Hotel for the room or taxes, but only for incidentals and other non-room related services the customer purchases at the Hotel.

61.     After the customer has completed their stay, the Hotel sends an invoice to the OTC for the Wholesale Rate and the Accommodation Tax based on the Wholesale Rate.

62.     Upon receipt, the OTC pays this amount to the Hotel, and the Hotel remits the taxes to Plaintiffs and the Class Members.

63.     No tax is paid on the difference between the amount charged to the customer and the Wholesale Rate.

64.     The OTC retains whatever it has collected over the amount remitted to the Hotel.

65.     Under the "merchant model," Defendants determine the Retail Rate that the Consumer pays.  Defendants have control over the price they offer to the Consumer and, therefore, control the profit they make from the markup.

66.     The "merchant model" is a prepaid model in which Defendants collect all monies up front from the Consumer at the time the on-line reservation is made and the Consumer's credit card is charged.

67.     Under the "merchant model," the taxable transaction is between the Consumer and the Defendants for the purchase of Lodging.

68.     There is no taxable transaction between the Hotel and the Consumer for the purchase of Lodging.

69.     Under the "merchant model," the only contract or agreement at the time the taxes

at issue are being assessed and collected is between the Defendants and the Consumer.

70.     Defendants sell rooms to Consumers and collect payments, including taxes from the Consumer at the time of booking.  Under the "merchant model," the Defendants have been or are currently controlling Hotels.

71.     Defendants are charging and collecting amounts as Accommodations Taxes and fees from Consumers in the State of Illinois, but are not remitting the Accommodations Tax Amounts to the appropriate Class Members.

72.     Instead, Plaintiffs and the Class Members only receive tax amounts based upon the lower, Wholesale Rate (the "Wholesale Tax Amount").  Each Defendant then retains for its own use and benefit the difference between the correct Accommodations Tax Amount and the incorrect Wholesale Tax Amount (the "Tax Monies Due and Owing").

73.     For example, Expedia negotiates with a Hotel for rooms at the lower Wholesale Rate and pays the Hotel a flat rate for each room sold, for instance $60.00 for a room in Oakbrook Terrace, Illinois.   Under the "merchant model," Expedia then controls the price offered to the Consumer. Expedia then sells the same room to the Consumer for a marked up price, for example $100.   Expedia charges taxes and fees that would approximately cover the taxes owed, which should be based upon the Retail Rate of $100. The amount of tax due in this example is 6% of $100 or $6.00.  *See* Oakbrook Terrace Code Title III, § 35.021.

74.     However, the amount of Accommodations Taxes remitted to Plaintiffs and other Class Members has been based on the lower Wholesale Rate. In this example, Oakbrook Terrace would only receive $3.60 (6% of $60.00), an underpayment of the tax liability by $2.40. Thus, in this single example transaction, Oakbrook Terrace's collected tax would be 40% less than the collected and the proper Accommodations Tax Amount of $6.00.

75.     In this manner, Defendants fail to remit the Accommodations Tax due and owing to Plaintiffs and Class Members.

76.     Upon information and belief, there are also occasions where Defendants unlawfully retain all monies charged to and collected from consumers as revenue without remitting any taxes to Plaintiffs or the Class Members.  Known in the industry as "breakage", the situation arises when a consumer books and prepays a Defendant for a hotel room and all monies (including Accommodations Tax) are collected, but the Defendant never remits any tax monies to the Plaintiff or Class Member.

77.     For example, in a no-show scenario, where a consumer books and prepays directly for the room rental but neither shows up nor timely cancels, the hotel retains the room rate but still remits the applicable Accommodations Tax to the Plaintiff or Class Member. However, if a consumer books and prepays with an OTC Defendant, and neither shows up nor timely cancels, the OTC Defendant retains all monies paid by the consumer, including the Accommodations Taxes and other taxes charged to and collected from the consumer.  In both of these scenarios the Plaintiff or Class Member is entitled to the full amount of taxes collected from the consumer at the time the transaction occurs, as the Defendants have a duty to remit the taxes regardless of any invoicing irregularities that may occur in a no-show scenario.[1]

78.     Defendants have also failed to properly file required regular, periodic tax returns/reports.  *See* Warrenville, Illinois City Code § 3-1-5(B)(4)(a); Bedford Park Code § 5-19-3; Oakbrook Terrace Code Title III, § 35.023(B); Oak Lawn Code § 3-2-6(E)(3); Orland Hills Code Title III, § 33.070(A); Rockford Code Pt. I, § 5-73(a); Willowbrook Code § 11-3-4 (A).

79.     The Class Members also have similar periodic tax return/reporting requirements.

---

[1] A Texas jury deemed the Defendants' practices illegal, including their "breakage" activities, and awarded more than $20 million in total to Texas local governments.  Penalties and interest will be added to that total.

80.     Defendants are collecting taxes from Consumers but, upon information and belief, not reporting such taxes to Plaintiffs or any Class Members.

81.     As stated, Defendants' business practices include charging Consumers un-itemized taxes and fees on each sale of Lodging.  The Consumer is led to believe Defendants are remitting the correct amount of Accommodations Tax to Plaintiffs.  Defendants, however, are calculating the tax liability of the general public (and Defendants) based upon the Wholesale Rate Defendants paid the Hotel for the room, not upon the Retail Rate that the Consumer paid Defendants.  As a result, the Accommodations Tax liabilities paid by the general public and owed to Plaintiffs are underpaid/unpaid by the Defendants who unlawfully retain the difference. These practices deprive Plaintiffs and the Class the full amounts due and owing to them from each sale of Lodging.

82.     Also, as stated, in addition to failing to properly pay collected taxes, Defendants do not disclose to the general public the amounts being paid for each specific tax and the amounts, if any, being paid separately as "service fees."  Defendants bundle the taxes and "service fees" as a way to keep the Wholesale Rate of the Lodging opaque.

83.     Defendants will not disclose the amount of Accommodations Tax being assessed even if the Consumer asks them.

84.     Defendants require that the Hotels not reveal to the Consumer what Defendants paid for the Lodging.  Likewise, the Hotels do not know what the Consumer paid Defendants for the Lodging.

85.     Only Defendants collect taxes from the Consumer in the "merchant model."  The Consumer is the taxpayer who ultimately pays the taxes.

86.     Under    the    "merchant   model,"   the   Hotels   never   collect   the   required

Accommodations Tax from the Consumer.

87. Under the "merchant model" and contained in the language of the contract between the Defendants and the Hotels, it is Defendants' responsibility to calculate the taxes and collect all monies, including tax monies, from the Consumer at the time of booking.

88. The only way for the Hotel to pay the correct Accommodations Tax to the Plaintiffs is if Defendants remit the additional tax owed (and which was actually paid by the Consumer to Defendants) to the Class Members.

89. The Defendants' failure to itemize taxes violates basic principles of tax transparency and further supports Plaintiffs' claims of Defendants' tax liability, and specifically violates express code provisions of many of the Class Members.

90. Due to the contractual or factual relationship between Defendants and the Hotels, Defendants and the Hotels act on behalf of each other to provide/sell customers Lodging, and are thus agents of one another. As such, they operate as joint enterprise members and have joint enterprise membership liability.

91. Defendants have a physical presence in the State of Illinois, including within the Class Member municipalities. Such presence includes, but is not limited to, providing and/or selling rooms in Hotels, serving as agents for Hotels for purposes of selling or providing rooms in those Hotels and, upon information and belief, by having employees or agents travel to Class Member municipalities within the State of Illinois to negotiate and enter into contracts with Hotels to review and rate those Hotels.

92. Upon information and belief, the "merchant model" represents a majority of the Defendants' total online bookings.

93. Defendant Priceline has explained its "merchant model" business practices in

Securities Exchange Commission ("SEC") filings as follows:

> For most of these transactions, we establish the price we will accept, have total discretion in supplier selection, **purchase and take title to the particular product and are the merchant of record**.  Consumers agree to hold their offers open for a specified period of time to enable us to fulfill their offers from inventory provided by participating sellers.  Once fulfilled, offers generally cannot be canceled.

*See* Priceline Annual Report (Form 10-K) (Mar. 15, 2003) at 29 (emphasis added).

94.    Expedia (DE) has similarly described its "merchant model" business practices in public filings as follows:

> Under the merchant model, **we receive inventory** (hotel rooms, airline seats, car rentals, destination services) from suppliers at negotiated rates.  **We determine the retail price paid by the customer and we then process the transactions as the merchant of record for the transaction.  Acting as a merchant enables us to achieve a higher level of gross profit per transaction** compared to the agency model and allows us to provide better prices to customers compared to agency transactions.  Merchant transactions comprised 58% of our total revenues in 2002 and are derived from the difference between what we pay for the inventory and what we charge the customer.

*See* Expedia (DE) Annual Report (Form 10-K) (March 31, 2003) at F-3 (emphasis added).

95.    Hotels.com has also identified itself as a "reseller" of hotel rooms obtained from hotels in SEC filings:

> We contract with hotels and other lodging properties in advance for volume

purchases and guaranteed availability of rooms at wholesale prices **and resell these rooms to consumers** through our websites, third-party affiliated websites and our toll-free call centers.

*See* Hotel Reservations Network, Inc. Annual Report (Form 10-K) (Apr. 2, 2001) at 3, 18 (emphasis added).

96.     Likewise, Travelocity.com, Inc. distinguished its purchase and re-sale transactions under the "merchant model" from those where it merely provided a service:

In order to increase it sales of higher margin products, Travelocity's business plan calls for it to increase **merchant model sales** pursuant to which **Travelocity serves as the merchant of record in the transaction rather than as the sales agent**.  In the merchant business, suppliers make inventory, such as airline seats, hotel rooms, car rentals, cruises, and vacation packages, available to Travelocity at wholesale or "net" rates.  The merchant of record then sets the retail price that the customer pays and then processes the transaction.  **The merchant business generally delivers higher revenue per transaction than comparable sales under the agency model, in which Travelocity acts as an agent in the transaction, passing a customer's reservation to the travel supplier and receiving a commission from the supplier for its services.**

*See* Travelocity.com, Inc. Annual Report (Form 10-K) (March 26, 2002) at 7 (emphasis added).

    **A.     Many Defendants Are Affiliated As Wholly Or Partially Owned Subsidiaries Of Each Other**

97.     Defendants Expedia (WA), Hotels.com, LP, Hotels.com GP, LLC, Hotwire, Inc., Travelscape and Egencia are affiliated business entities, related through a common corporate parent, Expedia (DE).

98.     Defendants Site59.com and Travelocity.com, LP are affiliated business entities in that they are both subsidiaries of Sabre Holdings Corporation.

99.     Defendants Priceline, Lowestfare, and Travelweb are all affiliated business entities in that Defendant Lowestfare is a wholly-owned subsidiary of Defendant Priceline and Defendant Travelweb is a wholly-owned subsidiary of Defendant Lowestfare.

100.     Defendants, in public communications, and through the media, have taken the position that they are not liable for hotel Accommodations Taxes on the retail amount of their sales of hotel room occupancy.  There is, therefore, an actual and live controversy between the parties.

**B.     Defendants Have Entered Into Agreements With Each Other To Market And Sell Hotel Room Inventory**

101.     Defendants, at all times mentioned herein, were acting under common plans, schemes or methodologies, and from time to time entered into agreements and ventures for the common marketing, distribution and sale or resale of Lodging throughout the State of Illinois.

102.     Upon information and belief, Defendants have shared products and customers and have entered into agreements and co-ventures for the sale or resale of hotel room inventory by cross-listing available hotel rooms on their respective Internet portals. Examples are listed in the following paragraphs.

103.     Upon information and belief, sometime between 1990 and the present, Hotels.com, LP and/or Hotels.com, GP, LLC contracted with Expedia (DE) and/or Expedia (WA) and Travelocity.com, LP and/or Travelocity.com, LLC to implement and maintain cooperative ventures including certain cross-selling initiatives.  Specifically, these agreements provided that the lodging inventory of Expedia (DE) and/or Expedia (WA) and Hotels.com, LP and/or Hotels.com, GP, LLC would be listed on Travelocity.com, LP and/or Travelocity.com,

LLC's website.

104.    Prior to its acquisition by Travelocity.com, LP, Site59 had written agreements with Priceline.  Prior to and after its acquisition by Travelocity.com, LP, Site59 had written agreements with Travelocity, LP.  These agreements created cooperative ventures including certain cross-selling initiatives.

105.    Upon information and belief, sometime in 2000 or thereafter Site59.com entered into marketing agreements with other entities, including Travelocity, LP and Priceline affiliated companies (whose subsidiaries include Defendants Lowestfare and Travelweb).

106.    Upon information and belief, sometime prior to the institution of this suit, Expedia (DE) and/or Expedia (WA) entered into a partnership agreement with Hotels.com, L.P. and/or Hotels.com, GP, LLC and Hotwire regarding its online hotel room booking business.

107.    Upon information and belief, sometime prior to the institution of this suit, Hotels.com. L.P. and/or Hotels.com, GP, LLC entered into a partnership agreement with Hotwire and TravelNow.com, Inc. regarding its online hotel room booking business.

108.    Upon information and belief, sometime prior to the institution of this suit, Hotwire entered into a partnership agreement with Expedia (DE) and/or (WA) and Hotels.com, LP and/or Hotels.com GP, LLC regarding its online hotel room booking business.

109.    Upon information and belief, sometime prior to the institution of this suit, Defendants Hotels.com, LP and/or Hotels.com GP, LLC and Lowestfare entered into an agreement related to the sale or resale of hotel room inventory.

110.    On information and belief, there are many other such marketing, distribution and partnership agreements between and among Defendants.

**C.      Defendants' Conduct Arises Out Of The Same Series Of Transactions Or Occurrences And Involves Common Questions Of Law And Fact**

111.    Defendants' conduct arises out of the same series of transactions or occurrences and involves common questions of law and fact.  The parties are all interested in the principal questions raised by this Complaint.  Moreover, Defendants' affiliations with each other and their agreements to market, sell and distribute each other's hotel room inventory logically connect their respective conduct.  As detailed above, Defendants have engaged and presently engage in a common practice and scheme of selling Lodging to Consumers at Retail Rates but remitting taxes based on their lower, negotiated Wholesale Rates.

112.    Further, the memberships of multiple Defendants in The Travel Technology Association ("Travel Tech") (formerly Interactive Travel Services Association  or "ITSA") further demonstrates the interrelatedness among Defendants and confirm common practices of Defendants in booking hotel rooms.  According to Travel Tech's website, the following Defendants are members of the organization: Expedia, Priceline, Sabre, and Travelocity.  The Travel Tech website makes numerous representations regarding the manner in which online travel companies do business, the manner in which rooms are booked, and Defendants' tax liabilities as a whole.

113.    Plaintiffs and Class Members have suffered damages in an amount to be proven at trial.  The amount in controversy is greater than $75,000.

## VI.    CLASS ALLEGATIONS

114.    Plaintiffs respectfully request that the Court certify this case as a class action.

115.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class is defined as follows:

> All Illinois municipalities that have enacted and collect a tax on the percentage of
> the retail rate that each consumer occupant pays for lodging, including service

costs, denominated in any manner, including but not limited to, occupancy tax, a hotel or motel room tax, a use tax, a privilege tax, a hotel or motel tax, a licensing tax, an accommodations tax, a rental receipts tax, a hotel operator's tax, a hotel operator's occupation tax, or a room rental, lease or letting tax.

116. This Class can be separated into four subclasses, including the following:

a) Illinois municipalities such as Bedford Park, Oakbrook Terrace and Oak Lawn that have enacted and collected a tax upon the use and privilege of a motel or hotel room described in ways including but not limited to the use and privilege of the room itself, the use and privilege of being a transient guest or lodger in a hotel or motel, or the use and privilege of renting, leasing or letting the rooms in a hotel or motel (hereinafter referred to as "Use and Privilege Subclass");

b) Illinois municipalities such as Orland Hills that have enacted and collected a tax upon the rental, leasing or letting of hotel or motel accommodations (hereinafter "Hotel Accommodations Subclass");

c) Illinois municipalities such as Warrenville, Rockford, and Willowbrook that have enacted and collected a tax upon all persons engaged in the municipality in the business of renting, leasing, or letting rooms in a hotel (hereinafter "Business of Rental Subclass"); and

d) Illinois municipalities such as Class Member City of Aurora, Illinois that have enacted and collected a tax on the gross receipts, rental rate or consideration paid for the privilege of renting, leasing or letting a hotel room that is due from the "owner" of the hotel as defined in each ordinance (hereinafter "Consideration Subclass").

117.     The Class, including the four subclasses, meets the prerequisites for the maintenance of a class action in that:

a)     the Class is so numerous that joinder of all members is impracticable;

b)     there are questions of fact and law common to the Class;

c)     the claims of the representative parties are typical of the claims of the Class; and

d)     the representative parties will fairly and adequately protect the interest of the Class.

118.     This action is properly maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure in that the Defendants have acted or refused to act on grounds generally applicable to the Class, thus making appropriate declaratory relief with respect to the class as a whole.

119.     Plaintiff Class Members contemplate the eventual issuance of notice to the proposed Class Members, which would set forth the subject and nature of the instant action. Defendants' own business records and electronic media can be utilized for the contemplated notices.

120.     Among the numerous questions of fact and law common to the Class are:

a)     whether Defendants use the "merchant model" for buying and selling Lodging in the State of Illinois;

b)     whether under the "merchant model" Defendants mark up the price from the Wholesale Rate (paid to the Hotel) to the Retail Rate (paid by the Consumer);

c)     whether Defendants are the "merchant of record" in their transactions with the Consumer;

d)     whether Defendants generally use the same basic charges, policies, and computer

systems together nationwide and including in the State of Illinois;

e)      whether Defendants have a legal duty to collect Accommodations Taxes from the Consumers who purchase from Defendants the right to occupy Lodging in the State of Illinois;

f)      whether Defendants have a legal duty to remit these Accommodations Taxes to Plaintiffs and/or other Class Members;

g)      whether Defendants have collected the at-issue tax, in the form of a tax, from the Consumers, but failed to remit the same to the Class Members;

h)      whether Defendants have failed to remit the taxes at issue based on the full and proper rates;

i)      whether, under the appropriate municipal ordinance and/or rule in effect at the time of each transaction, the amount of tax due and owing to Plaintiffs and the Class Members is to be calculated as a percentage of the Wholesale Rate or the Retail Rate, including any service fees charged by the OTCs;

j)      whether by voluntarily inserting themselves into the taxing scheme, the Defendants have the legal duty to calculate, collect and remit the taxes upon the Retail Rate, including any service fees charged by the OTCs;

k)      whether Defendants have committed acts of conversion;

l)      whether Defendants have been unjustly enriched; and

m)      whether, and in what amount, the Plaintiffs and the Class Members are entitled to recover court costs and attorneys' fees.

## VII.   CAUSES OF ACTION

### A.   First Claim for Relief: Declaratory Judgment Pursuant to § 23 U.S.C. § 2201 (Against All Defendants)

121.    Plaintiffs incorporate each of the above allegations by reference as if fully rewritten herein.

122.    Plaintiffs seek a declaration of rights and/or duties with respect to all Defendants. An actual controversy exists between Plaintiffs and these Defendants as to:

a)      whether Defendants have a duty, under law, to collect Accommodations Taxes from Consumers who purchase from Defendants the right to occupy Lodging in the municipalities that comprise the Plaintiff Class;

b)      whether the Accommodations Taxes are based on the Retail Rate, including any service fees charged by the OTCs;

c)      whether Defendants have a duty to remit these taxes to Plaintiffs and the Class;

d)      whether Defendants have failed to fulfill their duty under law to remit these taxes to Plaintiffs and the Class; and

e)      whether, under the appropriate ordinance and/or rule, the amount of tax due and owing to Plaintiffs and the Class is to be calculated as a percentage of the Retail Rate, without regard to service fees, operating expenses and other amounts currently deducted by Defendants.

**B.      Second Claim for Relief: Violations of Municipal Ordinances (Against All Defendants)**

123.    Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

124.    Plaintiffs and Class Members are municipalities that are authorized to levy and collect certain Accommodations Taxes.

125.    At all times herein, Defendants acted individually or in concert to provide/sell

Lodging to Consumers.

126.     Defendants are obligated under the municipal ordinances of the Class, including the four subclasses, to collect Accommodations Taxes on Lodging and to remit such taxes to remit to Plaintiffs and the Class Members.

127.     Defendants are acting as retailers, vendors, lessors, and/or renters.

128.     Defendants have failed to collect and remit to Plaintiffs and the Class Members the Tax Monies Due and Owing.

129.     Defendants have failed to report taxes collected on Lodging to Plaintiff and Class Members.

130.     As a result of their shared efforts, Defendants have a joint interest in the business of providing/selling Lodging to Consumers.

131.     Upon information and belief, Defendants have either express or implied agreements to share in the profits and losses of such an enterprise and joint venture. Accordingly, at all times herein, a joint venture and joint enterprise existed between one or more Defendants.

132.     Defendants are legally and constitutionally liable for the Tax Monies Due and Owing to Plaintiffs and the Class Members under their respective municipal ordinances. Defendants are liable individually and also as joint venturers.

133.     Defendants are also liable for penalties and interest under the municipal ordinances, which may include, but are not limited to, enhanced penalties for Defendants' negligent and/or fraudulent conduct.

134.     Failure to remit these taxes to Plaintiffs and the Class Members is deemed a debt owed by Defendants individually and also as members of the joint venture to Plaintiffs and the

Class Members in an amount to be determined at trial. The taxes owed and penalties and interest hereby sought to be recovered is to be determined by and in accordance with these municipal ordinances.

###### C. Third Claim For Relief: Conversion (Against All Defendants)

135. Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

136. Plaintiffs and the Class Members had a right to the specifically identifiable Tax Monies Due and Owing to them, had an absolute and unconditional right to the immediate possession of such tax monies, made a demand for possession of such tax monies, and Defendants wrongfully and without authorization assumed control, dominion or ownership over such tax monies.

137. In converting the Tax Monies Due and Owing, Defendants acted with deliberate oppression, willfulness and with such gross negligence as to indicate a wanton disregard of the rights of Plaintiffs and the Class Members.

138. As a direct and proximate result of Defendants' conversion, Plaintiffs and the Class Members have suffered and will continue to suffer damage in an amount to be proven at trial.

139. Because Defendants' conversion was accomplished with deliberate oppression, willfulness and with such gross negligence as to indicate a wanton disregard of the rights of Plaintiffs and the Class Members, Plaintiffs seeks punitive damages to punish Defendants and deter them and others from committing similar acts of wrongdoing in the future.

140. Defendants are liable for the acts of conversion individually and as members of a joint venture.

D. **Fourth Claim for Relief: Civil Conspiracy (Against All Defendants)**

141.     Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

142.     Defendants worked concertedly together for the unlawful purpose and/or the lawful purpose accomplished by unlawful means of depriving Plaintiffs and the Class Members of the Tax Monies Due and Owing.

143.     Defendants knowingly and voluntarily participated in the common scheme to deprive Plaintiffs and the Class Members of the Tax Monies Due and Owing.

144.     Defendants agreed by words and/or conduct to accomplish the unlawful goal including, but not limited to, of depriving Plaintiffs and the Class Members of the Tax Monies Due and Owing and Defendants performed one of more tortious and/or unlawful acts to accomplish that unlawful agreement.

145.     In addition or in the alternative, Defendants agreed by words or conduct to accomplish a lawful goal through unlawful means including, but not limited to, depriving Plaintiffs and Class Members of the Tax Monies Due and Owing and Defendants performed one or more unlawful and/or tortious acts to accomplish that goal.

146.     In their civil conspiracy, Defendants acted with deliberate oppression, willfulness and with such gross negligence as to indicate a wanton disregard of the rights of Plaintiffs and the Class.

147.     As a direct and proximate cause of Defendants' civil conspiracy, Plaintiffs and the Class have suffered and will continue to suffer damages in an amount to be proven at trial.

148.     Because Defendants' civil conspiracy was accomplished with deliberate oppression, willfulness and with such gross negligence as to indicate a wanton disregard of the

rights of Plaintiffs and the Class Members, Plaintiffs seeks punitive damages to punish Defendants and to deter them and others from committing similar acts of wrongdoing in the future.

149.    Defendants are liable for the acts of civil conspiracy individually and as members of a joint venture.

**E.      Fifth Claim For Relief: Unjust Enrichment (Against All Defendants)**

150.    Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

151.    Defendants have been enriched by retaining the Tax Monies Due and Owing without justification, which retention has caused Plaintiffs and the Plaintiff Class Members to become impoverished for which there is an absence of a remedy provided by law.

152.    Secondary to Defendants' unjust enrichment, Plaintiffs and Class Members are entitled to judgment against Defendants in an amount to be proven at trial, including but not limited to interest, costs, and pre- and post-judgment interest.

153.    Defendants are liable for the acts of unjust enrichment individually and as members of a joint venture.

**F.      Sixth Claim for Relief: Imposition of Constructive Trust (Against All Defendants)**

154.    Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

155.    At all times alleged herein, the specifically identifiable Tax Monies Due and Owing were in the possession and under the control of Defendants.  Defendants have taken this identifiable money to which they are not entitled under such circumstances that in equity and good conscience they ought not retain.

156.    By virtue of Defendants' actions, Defendants hold the Tax Monies Due and Owing as constructive trustee for the benefit of Plaintiffs and the Class Members.  Plaintiffs request an order that Defendants be directed to give possession thereof to Plaintiffs and the Class Members to avoid unjust enrichment.

**G.    Seventh Claim for Relief: Damages (Against all Defendants)**

157.    Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

158.    Plaintiffs request that the Court order Defendants to provide restitution to it and to disgorge the Tax Monies Due and Owing to Plaintiffs and the Plaintiff Class.

159.    Plaintiffs are entitled to interest and penalties on the unpaid Tax Monies Due and Owing.

160.    Plaintiffs request that they recover all penalties, interest, and reasonable and necessary attorneys' fees it is entitled to under the law and in equity.

161.    Plaintiffs request both pre- and post-judgment interest at the maximum rate allowed by law.

**H.    Eighth Claim for Relief: Punitive Damages (Against All Defendants)**

162.    Plaintiffs incorporate the allegations in the paragraphs within Sections I through VI by reference as if fully rewritten herein.

163.    As stated above in Plaintiffs' THIRD and FOURTH CLAIMs, Defendants have committed the intentional torts of conversion and civil conspiracy.

164.    Defendants' conduct in committing such conversion and civil conspiracy was with deliberate oppression, willfulness and with such gross negligence as to indicate a wanton disregard of the rights of Plaintiffs and the Class in that Defendants knowingly remitting only

part of the Accommodations Tax Amounts due and deceptively hiding illegal profit streams under labels such as "taxes," or "taxes or fees" or "tax recovery charges."

165.    As such, Plaintiffs request that the trier of fact, in the exercise of sound discretion, award Plaintiffs and the Class Members additional damages to punish and deter Defendants from committing similar acts of wrongdoing in the future.

<strong>PRAYER FOR RELIEF</strong>

WHEREFORE, Plaintiffs request, on behalf of itself and the Class Members, that this Court certify this suit under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class representative, and appoint the below-named attorneys as counsel for the Class.  Plaintiffs further request that, upon a final trial of this matter, judgment be entered in favor of Plaintiffs and the Class Members on all causes of action against the Defendants, including, without limitation, the following:

i.     An order certifying this case be maintained as a class action;

ii.    An order declaring the Defendants liable to Plaintiffs and the Class Members for the wrongful acts, omissions, practices, and schemes described herein;

iii.   Pursuant to 28 U.S.C. § 2201, a declaratory judgment determining that: Defendants have a duty to collect Accommodations Taxes from Consumers who purchase from Defendants the right to occupy Lodging in the municipalities that comprise the Plaintiff Class; that the Accommodations Taxes are based on the Retail Rate; that Defendants have a duty to remit these taxes to Plaintiffs and the Class; that Defendants have failed to fulfill their duty under law to remit these taxes to Plaintiffs and the Class; and that, under the appropriate hotel Accommodations Tax statute, ordinance, and/or rule, the amount of tax due and

owing to Plaintiffs and the Class is to be calculated as a percentage of the Retail Rate;

iv. An order imposing a constructive trust on all property in the possession of Defendants that in equity and good conscience belongs to Plaintiffs and the Class Members and does not belong to Defendants;

v. Damages in an amount to be proven at trial;

vi. Pre- and post-judgment interest, applicable fines, penalties and costs allowed by law;

vii. For punitive damages in a sufficient amount to punish Defendant and deter them from committing similar acts of wrongdoing in the future; and

viii. For any and all other relief allowed by law or equity, including such other and further relief as this Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 5th day of April, 2013.

s/Paul O'Grady
**PAUL A. O'GRADY**
Illinois Bar No. 6271373
**DOMINICK L. LANZITO**
Illinois Bar No. 6277856
**PETERSON, JOHNSON & MURRAY CHICAGO, LLC**
233 South Wacker Drive, Floor 84
Chicago, IL 60606
Phone: 312-782-7150
Facsimile: 312-896-9318
dlanzito@pjmlaw.com
pogrady@pjmlaw.com

s/Thomas K. Prindable
**THOMAS K. PRINDABLE**
Illinois Bar No. 2255340
**MICHAEL S. KRZAK**
Illinois Bar No. 6243295
**CLIFFORD LAW OFFICES, P.C.**
120 N. LaSalle Street, Suite 3100
Chicago, IL 60605
Phone: 312-899-9090
Facsimile: 312-251-1150
tkp@cliffordlaw.com

s/Donald J. Storino
**DONALD J. STORINO**
Illinois Bar No. 2747936
**RICHARD J. RAMELLO**
Illinois Bar No. 3124818
**STORINO RAMELLO & DURKIN**
9501 W. Devon Av.
8th Floor
Rosemont, IL 60018
Phone:  847-318-9500
Facsimile: 847-318-9509
dstorino@srd-law.com
rramello@srd-law.com

s/John W. Crongeyer
**JOHN W. CRONGEYER**
Georgia Bar No. 196264
**CRONGEYER LAW FIRM, P.C.**
2170 Defoor Hills Road, NW
Atlanta, GA 30318
Phone: (404) 542-6205
Facsimile: (404) 872-3745
jwc@birdlawgroup.com
(*Application for Admission Pro Hac Vice to be submitted*)

s/William Q. Bird
**WILLIAM Q. BIRD**
Georgia Bar No. 057900
**KRISTEN L. BEIGHTOL**
Georgia Bar No. 425814
**BIRD LAW GROUP, P.C.**
2170 Defoor Hills Road, NW
Atlanta, GA 30318

Phone: (404) 873-4696
Fax: (404) 872-3745
wqb@birdlawgroup.com
klb@birdlawgroup.com
(*Applications for Admission Pro Hac Vice to be submitted*)

s/Robert K. Finnell
**ROBERT K. FINNELL**
Georgia State Bar No. 261575
**THE FINNELL FIRM**
One West Fourth Avenue, Suite 200
Post Office Box 63
Rome, Georgia 30162
Phone: (706) 235-7272
Facsimile: (706) 235-9461
bob@finnellfirm.com
(*Application for Admission Pro Hac Vice to be submitted*)